1  Karen Albence (SBN 241719)
2  Kristin Westphal (SBN 202046)
   **HARRIS SLIWOSKI LLP**
3  700 S. Flower Street, Suite 1000
4  Los Angeles, CA 90017
   Telephone:  (424) 273-5500
5  Email:      karen@harris-sliwoski.com
6              kristin@harris-sliwoski.com

7  *Attorneys for Plaintiff*
   JACK RICHTER

8

                    **UNITED STATES DISTRICT COURT**
9
                   **CENTRAL DISTRICT OF CALIFORNIA**
10

11 | JACK RICHTER, an individual,              | Case No.
12 |                                            |
   |                    Plaintiff,              | **COMPLAINT**
13 |                                            |
   |       vs.                                  | ***JURY TRIAL DEMANDED***
14 |                                            |
15 | KRG TRADING, INC., a California            |
16 | corporation; KAI-JHEN HUANG, an            |
   | individual; Z&Q INTERNATIONAL              |
17 | TRADING CO., LTD., a California            |
18 | corporation; ZHENGXIN ZHOU, an             |
   | individual; DLAB MAX LIMITED, a            |
19 | California corporation; JIEXIN LIN, an     |
20 | individual WEALTH USA, INC., a New         |
   | York corporation; AE PAY, INC., a          |
21 | New York corporation; and DOES 1-20,       |
22 | inclusive,                                 |
23 |                    Defendants.             |

24
25
26
27
28

-1-
COMPLAINT

## NATURE OF ACTION

1. Plaintiff Jack Richter, an individual, (hereinafter referred to as "Plaintiff"), by and through undersigned counsel, hereby sues Defendants for damages and equitable relief. As grounds therefor, Plaintiff alleges the following:

2. This action is brought by Plaintiff, an Illinois citizen, who lost over $5 million from a fraudulent romance and investment scam known as "pig butchering" (hereinafter referred to as the "Scheme"). Pig butchering is a scheme in which a scammer slowly works to gain the trust of their victim before convincing them to invest money they will never get back.

3. In a typical "pig butchering" scheme, scammers use elaborate story lines to make victims believe they are in a romantic relationship. Once the victim reaches a certain point of trust, they are brought into an investment scheme and promised substantial returns. The scammers provide the victims with fabricated evidence to bolster the scheme's legitimacy and reduce the victim's skepticism. The fabricated evidence includes fake investment platforms via a website or mobile application made to look like a legitimate and functioning trading platform or investment company to entice their victim to "invest." The scammers may also provide fake photos of the love interest and fake transaction photos that create the impression that the scammers are using their own funds to also invest. In the beginning the "investments" yield great results and the victim appears to be making money and doing well. However, the investment gains displayed on the platform website or mobile application are fabricated. The investment platform does not exist, and all information contained on the platform is controlled by the scammers. When the victims have been sufficiently "fattened" with false profits, scammers manufacture a "loss" and cover their tracks by moving the stolen money through a maze of subsequent transactions, often using cryptocurrency because it can be quickly and anonymously transferred and is difficult to trace.

4. The Defendants each played a material role in the Scheme and, upon information and belief, currently possess all or a significant portion of Plaintiff's stolen funds, which on information and belief, are being held in the various business bank accounts in the United States Plaintiff was directed to deposit money into by Scammer 2.

5. As a result of Defendants' fraudulent behavior, Plaintiff has suffered grave economic harm for which he seeks compensatory and equitable relief and to recover his stolen funds and all costs and associated expenses, plus an award of punitive damages.

## PARTIES, JURISDICTION, AND VENUE

6. Plaintiff is an individual, and all times mentioned herein was, a citizen and resident of the State of Illinois.

7. Plaintiff is informed and believes, and based thereon alleges, that at all times mentioned herein KRG Trading, Inc. ("KRG") was and is a corporation founded under the laws of the State of California, whose primary corporate offices are located at 811 W 7th St., Suite 1200, Los Angeles, CA 90017.

8. Plaintiff is informed and believes, and based thereon alleges, that Kai-Jhen Huang is a current, or former, owner and the chief executive officer, chief financial officer, and secretary of KRG.

9. Plaintiff is informed and believes, and based thereon alleges, that at all times mentioned herein Z&Q International Trading Co., Ltd. ("Z&Q") was and is a corporation founded under the laws of the State of California, whose primary corporate offices are located at 5605 Santa Monica Blvd. #303247, West Hollywood, CA 90069.

10. Plaintiff is informed and believes, and based thereon alleges, that Zhengxin Zhou is a current, or former, owner and the chief executive officer, chief financial officer, and secretary of Z&Q.

11. Plaintiff is informed and believes, and based thereon alleges, that at all times mentioned herein Dlab Max Limited ("Dlab") was and is a corporation founded under the laws of the State of California, whose primary corporate offices are located at 177 E. Colorado Blvd., Suite 200, Pasadena, CA 91105.

12. Plaintiff is informed and believes, and based thereon alleges, that Jiexin Lin is a current, or former, owner and the chief executive officer, chief financial officer, and secretary of Dlab.

13. Plaintiff is informed and believes, and based thereon alleges, that at all times mentioned herein Wealth USA, Inc. ("Wealth USA") was and is a corporation founded under the laws of the State of New York, whose primary corporate offices are located at 230 Grand St., Suite 401A, New York, NY 10013.

14. Plaintiff is informed and believes, and based thereon alleges, that at all times mentioned herein AE Pay, Inc. ("AE Pay") was and is a corporation founded under the laws of the State of New York, whose primary corporate offices are located at 3439 31st St., Suite 2, Store 2, Long Island City, NY 11106.

15. Plaintiff is informed and believes, and based thereon alleges, that each and every Defendant sued herein was at all times mentioned herein the agent or employee of each of the remaining Defendants and was, at all times, acting within the purpose and scope of its agency and/or employment. As such, whenever any reference is made in this Complaint to any act of any Defendant(s), that allegation shall mean that each Defendant acted individually and jointly with the other Defendants.

16. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 by virtue of violations of federal law, in particular the Racketeer Influenced and Corrupt Organizations Act ("RICO").

17. This Court also has original jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. § 1332 by virtue of complete diversity of citizenship and because the amount in controversy exceeds $75,000, exclusive of interests and costs.

18. This Court has personal jurisdiction over Defendants due to their substantial contacts with California, as alleged herein. KRG, Z&Q and Dlab have their primary corporate offices in Los Angeles, California, West Hollywood, California, and Pasadena, California and Kai-Jhen Huang, Zhengxin Zhou and Jiexin Lin are current or former owners and directors of KRG, Z&Q and Dlab.

19. The Court has general personal jurisdiction over Wealth USA and AE Pay due to their involvement in the Scheme, interrelatedness of the claims and the tortious acts thereto that took place in the State of California that give rise to this lawsuit.

20. Pursuant to California Code of Civil Procedure § 395(a), venue is proper in this Court because KRG, Z&Q and Dlab have their primary corporate offices in Los Angeles, California, West Hollywood, California, and Pasadena, California and Kai-Jhen Huang, Zhengxin Zhou and Jiexin Lin are current or former owners of KRG, Z&Q and Dlab.

21. Pursuant to 28 U.S.C. § 1391, the venue is also proper in this Court because a substantial part of the events or omissions giving rise to this claim occurred within the judicial district.

22. The Plaintiff reserves the right to amend this Complaint to include additional parties as Defendants, upon further investigation and discovery of their identities, roles, and residences.

## FACTUAL ALLEGATIONS

*Defendants Contact Plaintiff and Persuade Him to Make Investments*

23. On or around July 12, 2023, Plaintiff was approached by an individual named "Ellie" on a social dating site, intended for friendship and connection. Shortly thereafter "Ellie," phone number +202-773-7696, ("Scammer 1") steered Plaintiff to WhatsApp Messenger, a mobile communications application, to engage in direct communications outside of the dating site.

24. Scammer 1 held herself out as a female individual looking for a romantic relationship. Scammer 1 sent Plaintiff many pictures of "herself" that portrayed a young, and beautiful woman. Through a series of WhatsApp message exchanges, Scammer 1 inserted herself into Plaintiff's life and repeatedly made comments to assure Plaintiff she was interested in an intimate and long-term relationship, eventually becoming his "fiancée". Plaintiff later learned that the pictures of "Ellie" she provided were actually pictures of a Korean model, Jung Hee Lee.

25. Plaintiff is informed and believes, and based thereon alleges, that Defendants Kai-Jhen Huang, Zhengxin Zhou and Jiexin Lin falsely identified themselves as Ellie (Scammer 1) to Plaintiff.

26. Scammer 1 claimed to have had investing success based on financial advice from her uncle, who had knowledge that would yield profitable forex trades. Scammer 1 advised Plaintiff to make the same investments that she was preparing to make so they could build wealth to use for their "future together" which Scammer 1 led Plaintiff to believe included marriage.

27. On or about August 8, 2023, Scammer 1 guided Plaintiff to open an account with a foreign exchange market ("forex") broker, Beraring International Co., Ltd. ("Beraringfx"), and its corresponding website, beraringfx.com.

28. Scammer 1 advised Plaintiff that Beraringfx and beraringfx.com provided their users with a direct plug-in to the MetaTrader 5 trading platform, which is a free application for traders to perform technical analysis and trading operations in the forex and other exchange markets.

29. MetaTrader 5, also known as MT5, is a smartphone application that allows investors to perform analysis and trading in foreign exchange, stocks, futures, and cryptocurrency. MT5 is a user interface for countless investment firms and allows investment firms that would otherwise not have a smartphone application to link their services and view their investment activity on their smartphone.

### *Defendants Create a Fake Investment Platform*

30. On or about August 2023, Scammer 1 told Plaintiff to "transfer" funds into Plaintiff's "trading account" with Beraringfx. Scammer 1 advised Plaintiff she would instruct him to make certain "trades" based on financial advice from her uncle.

31. In furtherance of their Scheme, Scammer 1 introduced Plaintiff to an individual who claimed to be a customer service representative ("Scammer 2"). Using WhatsApp phone number +61-426-927-284, Scammer 2 pretended to assist Plaintiff in funding his Beraringfx trading account.

32. Plaintiff is informed and believes, and based thereon alleges, that Defendants Jhen Huang, Zhengxin Zhou and Jiexin Lin falsely identified themselves as this Beraringfx representative to Plaintiff.

33. On August 8, 2023, Scammer 2 instructed Plaintiff to wire funds from his bank to a JP Morgan Chase business account for Defendant KRG that would be used to fund Plaintiff's newly opened "trading account" with Beraringfx. Scammer 2 explained that Plaintiff needed to obtain the bank and account information from customer service each time Plaintiff wished to recharge (deposit) funds into or withdraw funds out of his trading account.

34. Plaintiff initially hesitated to deposit money, but trusted Scammer 1 and believed her when she said this was sound business trading platform, from which she had made numerous successful investments.

35. From August 2023 through February 2024, Scammer 2 provided Plaintiff with wire transfer instructions to several different business bank accounts, all in the name of the Defendant companies. Plaintiff made a total of seven (7) bank wire transfers to six (6) different business bank accounts, in the total amount of $5,500,000.

36. Scammer 2 explained to Plaintiff that the reason for the different bank wiring instructions each time was because "wire transfer limits" necessitated the use of multiple bank accounts to fund the Plaintiff's trading account.

37. Over the next few months Plaintiff executed several "successful" trades by following Scammer 1's instructions based on supposed investment information she received from her uncle. Scammer 1 was pleased with Plaintiff and stated she too had investment success.

38. On December 18, 2023, Plaintiff asked Scammer 2 how to withdraw some funds from his Beraringfx trading account. Scammer 2 instructed Plaintiff to make a withdrawal through the beraringfx.com website, which Plaintiff successfully did.

39. Thereafter, Plaintiff requested and successfully withdrew several smaller amounts from his Beraringfx trading account, which instilled further confidence in him that the platform was legitimate, and his financial gains were real.

40. In February 2024, Plaintiff's Beraringfx account showed a balance of over $21 million. Scammer 1 then advised Plaintiff about a new trading opportunity.

### *The Defendants Manipulate Plaintiff's Account to Show a Trading Loss*

41. On February 16, 2024, Scammer 1 told Plaintiff to execute a trade, which he did. Shortly after initiating the trade, the shown price fell abruptly and significantly, which showed a BTCUSD (bitcoin) trade that lost over $23 million, resulting in an apparent negative balance of nearly $2 million for Plaintiff.

42. In trading scams that utilize the MT5 platform, the scammers manipulate the MT5 server data to show profitable trades, often far above market trends. The scammers can also manipulate MT5 server data to show losses when it benefits them to do so, as they did here. A subsequent analysis of actual BTCUSD trading at that time and date showed that a legitimate executed trade would not have resulted in a loss of over $23 million.

43. Later, on February 16, 2024, Plaintiff tried to make a withdrawal from his trading account of $250,000 and informed Scammer 2 of his request.

44. Scammer 2 told Plaintiff he had to pay off his negative Beraringfx account balance by March 1, 2024 before any withdrawal requests could be fulfilled.

Scammer 1 claimed to have also suffered a loss due to the February 16, 2024 trade. Scammer 1 encouraged Plaintiff to "solve the negative balance" problem and deposit even more money into Plaintiff's "trading account."

45. Over the next several weeks, Scammer 1 and Scammer 2 instructed Plaintiff to make additional deposits into his "trading account" to cover the negative account balance and to attempt to earn the money back through future "trades." No funds from Plaintiff's account would be released until this "penalty" was paid. Scammer 1 exerted increasing pressure on Plaintiff to deposit more money and utilized emotional pleas and other manipulation tactics, such as making promises to visit, to extract more money from Plaintiff.

46. Thereafter, through conversations with a business associate and a subsequent independent investigation, Plaintiff realized Scammers 1 and Scammer 2 were not being truthful and had manipulated his trading account in real time to show profits and losses that did not exist. By comparing the exact time of his losing trade from an independent site, with the exact time of the losing trade as reflected on his Beraringfx account, Plaintiff was able to determine that his trades were not made on the real market. Further investigation revealed that the purported loss of $23 million had not and could not have occurred.

47. At the same time Plaintiff was conducting an investigation into his Beraringfx trades, Scammer 1 was still communicating with him and encouraging him to deposit more money into his account so trading could resume. Scammer 1 told Plaintiff that she too had lost money in the last trade but had paid the negative balance and was once again trading and making gains. It was at this time that Plaintiff realized Scammer 1 was part of the Scheme. In order to not tip off the scammers, Plaintiff has continued to communicate with Scammers 1 and Scammer 2 but has not transferred any additional funds or made any additional trades, despite the escalating pressure from Scammers 1 and 2 to do so.

## FIRST CAUSE OF ACTION

### (Fraud Against Defendants and DOES 1-20)

48. Plaintiff incorporates, adopts, and re-alleges as though fully set forth herein, each and every allegation in Paragraphs 1 through 47 above.

49. Defendants knowingly made false and fraudulent statements of material fact to Plaintiff by representing that they could provide Plaintiff with an investing opportunity by helping him create a "trading account" they knew to be counterfeit, instructing him to deposit funds into the counterfeit "trading account," by wiring those funds to different business bank accounts in the name of several different companies, and by instructing him to make certain forex "trades" on their counterfeit platform, beraringfx.com.

50. The false and fraudulent representations of material fact include: (a) that Defendants could help Plaintiff create a counterfeit "trading account" for Plaintiff's benefit, (b) that Plaintiff would receive a return on investment in the form of profits that would be sent to his "trading account" that could be withdrawn or used to make further trades, and (c) that Plaintiff owned the account and would be able to withdraw his investment or profits.

51. Defendants knew the above-described misrepresentations made to Plaintiff were false and fraudulent when they were made.

52. Defendants made the above-described misrepresentations and engaged in such conduct to induce Plaintiff into relying on the misrepresentations.

53. Plaintiff relied on Defendants' misrepresentations.

54. Defendants are jointly and severally liable for the misrepresentations made to Plaintiff because they each played an essential role working in concert to further the unlawful, fraudulent scheme.

55. Defendants actively and purposefully concealed their actions from Plaintiff by, among other things, purporting to provide Plaintiff with an investing opportunity by helping him create the counterfeit "trading account," instructing him

to deposit funds into the counterfeit "trading account" by wiring those funds to different business bank accounts in the name of several different companies, and instructing him to make certain forex "trades" on their counterfeit platform, beraringfx.com.

56.     As a result of his reliance, Plaintiff has incurred damages of over $5 million that he paid to Defendants between August 2023 and December 2023.

57.     Defendants engaged in fraudulent and/or malicious conduct, in violation of public policy, so as to justify an award of exemplary and punitive damages in an amount according to proof.

## SECOND CAUSE OF ACTION

**(Unjust Enrichment Against All Defendants and DOES 1-20)**

58.     Plaintiff incorporates, adopts, and re-alleges as though fully set forth herein, each and every allegation in Paragraphs 1 through 57 above.

59.     Plaintiff conferred a benefit upon Defendants through the payment of funds to the counterfeit "trading account" in exchange for their promise that those funds would be available for him to make certain forex "trades" for his benefit.

60.     Plaintiff's payments to Defendants were ultimately distributed to Defendants, to profit off of Plaintiff's investment capital.

61.     Defendants voluntarily accepted and retained the benefit of Plaintiff's payments.

62.      Defendants are jointly and severally liable for orchestrating the scheme to steal Plaintiff's investment capital as part of an unlawful and fraudulent scheme, which induced Plaintiff to confer benefits on Defendants. Each of the Defendants played an essential role as co-conspirators and orchestrators of the unlawful and fraudulent scheme described above.

63.     Because Defendants knowingly created and orchestrated this scheme with the sole goal of stealing Plaintiff's capital investments, the circumstances are such that it would be inequitable to allow Defendants to retain the benefit of the

monies paid.

64. As a direct and proximate result of the above-described conduct, Plaintiff has been damaged, and Defendants have been unjustly enriched by at least $5,500,000 from August 2023 through March 2024.

## THIRD CAUSE OF ACTION

**(Conspiracy to Commit Fraud Against All Defendants and Does 1-20)**

65. Plaintiff incorporates, adopts, and re-alleges as though fully set forth herein, each and every allegation in Paragraphs 1 through 64 above.

66. Defendants and Does 1-20 had an agreement to commit fraud upon the Plaintiffs as more fully described in the preceding paragraphs 48-57.

67. Defendants were aware that other remaining Defendants were engaging in fraud and schemes to engage in financial fraud.

68. Defendants agreed with and/or intended that the fraud and schemes to engage in financial fraud be committed.

69. Defendants opened and utilized business bank accounts for transfer of fraudulently obtained funds in furtherance of the fraud and scheme of financial fraud upon individuals including the Plaintiff.

70. As a result of Defendants' conduct and actions, Plaintiff has incurred damages of over $5 million that he paid to Defendants between August 2023 and December 2023.

71. Defendants engaged in fraudulent and/or malicious conduct, in violation of public policy, so as to justify an award of exemplary and punitive damages in an amount according to proof.

## FOURTH CAUSE OF ACTION

**(Conversion Against All Defendants and Does 1-20)**

72. Plaintiff incorporates, adopts, and re-alleges as though fully set forth herein, each and every allegation in Paragraphs 1 through 71 above.

73. Plaintiff incorporates by reference the allegations contained in the

paragraphs set forth above.

74. At all times material hereto, Plaintiff owned and had the right to immediately possess the assets that Defendants represented to him were held in Defendants' bank accounts and then transferred into Plaintiff's counterfeit Beraringfx account, not just a mere right to payment for the value of those assets.

75. Since August 2023, Defendants have intentionally exercised dominion and control over Plaintiff's funds in such a manner that deprived Plaintiff of his right to those funds, without lawful justification.

76. When Plaintiff deposited the investment monies into what he believed was a forex exchange, the investment monies were actually being deposited into a bank account Defendants controlled, and Defendants intentionally took possession of and assumed control over Plaintiff's assets.

77. Defendants have deprived and continue to deprive Plaintiff of these funds without Plaintiff's consent.

78. As such, Defendants wrongfully converted Plaintiff's assets.

79. Defendants, through actual fraud, misappropriation, conversion, theft, and other means, obtained Plaintiff's investment funds, which in equity and good conscience Defendants should not be permitted to hold.

80. The assets at issue are specific, identifiable sums and can be traced through the various banks they were deposited into through the deposit dates, the beneficiary account number, beneficiary address, and routing numbers.

81. Defendants' conduct was intentional, outrageous, and in wanton disregard of Plaintiff's rights to the funds and warrants the imposition of punitive damages.

## FIFTH CAUSE OF ACTION
**(Imposition of a Constructive Trust and Disgorgement of Funds Against All Defendants and Does 1-20)**

82. Plaintiff incorporates, adopts, and re-alleges as though fully set forth

-13-
COMPLAINT

herein, each and every allegation in Paragraphs 1 through 81 above.

83. This is an action to impose a constructive trust upon the money taken from Plaintiff that, upon information and belief, is currently held by Defendants in the following bank accounts:

- JP Morgan Chase, National Association (Account No. 526173227)
- JP Morgan Chase, National Association (Account No. 3997397386)
- JP Morgan Chase, National Association (Account No. 3997397386)
- JP Morgan Chase, National Association (Account No. 3998109715)
- East West Bank (Account No. 8012008275)
- Bank of America, National Association (Account No. 325170435222)
- Bank of America, National Association (Account No. 325189790408)
- Chase Bank (Account No. 580590977)

(collectively hereinafter the "Bank Accounts").

84. This action further calls for the restoration to Plaintiff of the wrongfully obtained funds.

85. As set forth above, Defendants, through actual fraud, misappropriation, conversion, theft, and other means, obtained Plaintiff's investment monies, which in equity and good conscience Defendants should not be permitted to hold.

86. The assets at issue are specific, identifiable funds and can be traced to and through the Bank Accounts held by Defendants.

87. Any and all assets being held by Defendants in the Bank Accounts must be held in trust for Plaintiff's benefit, as Defendants are not entitled to the benefit of wrongfully misappropriated, converted, stolen funds and/or cryptocurrency that were taken from Plaintiff.

88. The monies held by Defendants or their accomplices in the Bank Accounts, must be disgorged to Plaintiff's benefit, as Defendants are not entitled to the benefit of wrongfully misappropriated, converted, and stolen funds and/or cryptocurrency assets that were taken from Plaintiff.

89. Wherefore Plaintiff demands judgment in his favor and against Defendants, jointly and severally, for compensatory damages in the amount of about $5 million and punitive damages, together with interest, attorney's fees, costs, and expenses of suit to the extent recoverable, and for such other relief as this Court deems just and proper under the circumstances.

## SIXTH CAUSE OF ACTION

**(Violation of 18 U.S.C. § 1962(c) Against All Defendants and Does 1-20)**

90. Plaintiff incorporates, adopts, and re-alleges as though fully set forth herein, each and every allegation in Paragraphs 1 through 89 above.

91. All Defendants formed an association-in-fact "enterprise" ("the Fraudulent Enterprise") as that term is defined in 18 U.S.C. § 1961(4), that engages in, and the activities of which affect, interstate commerce.

92. The members of the Fraudulent Enterprise are and have been joined in a common purpose, have relationships with and among each other, and have associated through time sufficient to permit those associated to pursue the enterprise's purpose. Defendants forged symbiotic relationships and each Defendant needed and depended upon the participation of the other Defendants to accomplish their common purpose of defrauding Plaintiff through fraudulent conduct. Specifically, the false and fraudulent representations of material fact include: (a) that Defendants could help Plaintiff create a "trading account" for Plaintiff's benefit, (b) that Plaintiff would receive a return on investment in the form of profits that would be sent to his "trading account" that could be withdrawn or used to make further trades, and (c) that Plaintiff owned his account and could withdraw his investment or profit at his discretion.

93. Each Defendant has been employed by and/or associated with the Fraudulent Enterprise.

94. Each Defendant has knowingly conducted and/or participated in, directly or indirectly, the conduct of the Fraudulent Enterprise's affairs through a pattern of racketeering activity consisting of numerous and repeated violations of the federal

wire fraud statute, 18 U.S.C. § 1343, involving the use of interstate wire facilities to transfer money to execute a scheme to defraud. These acts, committed by interstate wire, included receiving wire payments that the Fraudulent Enterprise misrepresented: (a) would be held in Plaintiff's "trading account" for future trading, (b) would be available for Plaintiff to invest so he could receive a return on investment in the form of profits that would be sent to his "trading account" that could be withdrawn or used to make further trades, (c) could be withdrawn by Plaintiff at his discretion, and (d) would otherwise remain in Plaintiff's account for his own use.

95. Plaintiff has been injured by reason of the above-described conduct in that the members of the Fraudulent Enterprise have stolen more than $5 million of Plaintiff's investment capital.

## SEVENTH CAUSE OF ACTION

**(Violation of 18 U.S.C. § 1962(d) Against All Defendants and Does 1-20)**

96. Plaintiff incorporates, adopts, and re-alleges as though fully set forth herein, each and every allegation in Paragraphs 1 through 95 above.

97. The Fraudulent Enterprise is an association-in-fact "enterprise," as that term is defined in 18 U.S.C § 1961(4), that engages in, and the activities of which affect, interstate commerce.

98. Defendants have willfully combined, conspired, and agreed to violate 18 U.S.C. § 1962(c), that is to conduct and/or participate in, directly or indirectly, the conduct of the Fraudulent Enterprise's affairs through a pattern of racketing activity consisting of numerous and repeated violations of the federal wire fraud statute, 18 U.S.C. § 1343, involving the use of interstate wire facilities to transfer money to execute a scheme to defraud. These acts, committed by interstate wire, included receiving payments the Fraudulent Enterprise misrepresented: (a) would be held in Plaintiff's "trading account" for future trading, (b) would be available for Plaintiff to invest so he could receive a return on investment in the form of profits that would be sent to his "trading account" that could be withdrawn or used to make further trades,

(c) could be withdrawn by Plaintiff at his discretion, and (d) would otherwise remain in Plaintiff's account for his own use.

99. Defendants knew of, agreed to, and acted in furtherance of the overall objective of the conspiracy by facilities this fraudulent scheme wherein they induced Plaintiff to wire money when their sole goal was to steal Plaintiff's investment capital.

100. Plaintiff has been injured by reason of the above-described conduct in that the members of the Fraudulent Enterprise have stolen more than $5 million of Plaintiff's investment capital.

## EIGHTH CAUSE OF ACTION

**(Request for an Injunction Against All Defendants and Does 1-20)**

101. Plaintiff incorporates, adopts, and re-alleges as though fully set forth herein, each and every allegation in Paragraphs 1 through 100 above.

102. Plaintiff seeks to freeze Defendants' assets and enjoin Defendants from dissipating assets pending disposition of this action.

103. There is a substantial likelihood that Plaintiff will prevail on the merits of his fraud, unjust enrichment, conversion, constructive trust and RICO claims because Defendants perpetrated a fraudulent scheme whereby, they created and operated an illusory foreign exchange scheme with the sole intention of inducing Plaintiff to invest so they could steal Plaintiff's investment capital and divert it for their own use.

104. If the Court does not grant a preliminary injunction, Defendants will continue activities and dissipate their assets such that Plaintiff will not be able to recover his investment capital, causing irreparable injury to Plaintiff.

105. Defendants will not suffer undue hardship or loss as a result of the issuance of preliminary injunction.

106. Issuance of a preliminary injunction would not adversely affect the public interest.

107. Plaintiff seeks waiver of the requirement to post a bond but is willing to post a bond if the Court deems it appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

A. An order freezing Defendants' assets and enjoining and restraining Defendants from dissipating or encumbering any of their assts until the disposition of Plaintiff's claims in this action;

B. An order granting judgment against Defendants, jointly and severally, for compensatory damages of at least $5 million plus interests and costs;

C. An order granting restitution, including disgorgement of profits obtained by Defendants as a result of their acts of unjust enrichment;

D. An order granting Plaintiff treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c);

E. The equitable imposition of a constructive trust over the property taken from Plaintiff that is currently held by Defendants in the Bank Accounts; and entry of an Order that the wrongfully obtained property be restored to Plaintiff;

F. An order granting Plaintiff punitive and exemplary damages;

G. Any such other and further relief in law and/or equity that the Court deems equitable, just, and proper.

Dated: May 1, 2024         HARRIS SLIWOSKI LLP

                           _____
                           Karen Albence
                       By: Kristin Westphal
                           *Attorneys for Plaintiff*
                           JACK RICHTER

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rules of Civil Procedure, Rule 38(b), and Local Rule 38-1, Plaintiff hereby respectfully demands a trial by jury with respect to all issues and claims asserted in this action.

Dated: May 1, 2024                HARRIS SLIWOSKI LLP

By: _____
Karen Albence
Kristin Westphal
*Attorneys for Plaintiff*
JACK RICHTER